UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Joseph B. Bey, Jr., | * | |
| Petitioner/Plaintiff, | * | |
| | * | |
| | * | |
| -vs- | * | Civil No. **05-11757-REK** |
| | * | |
| | * | |
| United States Department of Justice, | * | |
| Respondent/Defendant | * | |

---

## PETITIONER'S TRAVERSE TO GOVERNMENT'S OPPOSITION PURSUANT TO 28 U.S.C. § 2241

---

Now comes Joseph B. Bey, Jr. proceeding In propria persona in the above styled action and numbered cause, to be referred herein after as "Petitioner", respectfully moving this most honorable court with his traverse to the government's ("Respondent") opposition to the petition filed pursuant to 28 U.S.C. § 2241.[1] In support of this motion petitioner hereby avers as follows:

The petitioner has raised a claim under the provisions of Title 28 U.S.C. § 2241, after exhausting his administrative remedies, in the Federal Bureau of Prisons ("FBOP") to challenge and correct the effect of events that were 'subsequent' to the conviction and imposition of sentence. Section 2241 has been established as a separate statutory enactment, as such it is

---

[1] 28 U.S.C. § 2248 states: "The allegations of a term of the habeas corpus or an answer to an Order to "Show Cause" in a habeas corpus proceeding if not Traversed shall be accepted as true."

entitled to its own reading and should not be constrained by
case law previously articulated for § 2254 and 2255 cases. The
need for deterrence to adverse actions in a prison environment
is paramount, and 2241 is a continuing mandate from Congress,
that insures all sentences be carried out appropriately, and in
accordance with the constitutional protections provided.

The Department of Justice ("DOJ"), through its branch of
the Federal Bureau of Prisons ("FBOP"), has prosecuted an action
of which the United States Attorney's Office concurs with, that
adversly affects the manner in which petitioner's sentence is
being carried out. The power and authority of the court general-
ly, under proper circumstances, judgments of a court of record
are subject to be opened up, modified, corrected, set aside and
vacated. The power of the court so to act, though much modified
by statute, existed at common law, and has always been exercised
in the judicial discretion of the court. Here, petitioner has
invoked jurisdiction of the court, to so act, pursuant to a writ
of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 1331. [2]

## THE GOVERNMENT'S ATTEMPT TO RECHARACTERIZE PETITIONER'S PLEADING INTO THAT OF AN ACTION UNDER § 2255 LACKS MERIT

The matter of recharacterization of a pro se prisoner's
pleading has been addressed on a number of occasions, by the
Circuit Courts. All of these courts have reasoned that a pro se

---

[2] 28 U.S.C. § 2241 is the proper avenue, where petitioner has exhausted his
administrative remedies, regarding actions of the prison system, thereby
seeking the issuance of a writ of habeas corpus to correct said adverse
action.

-2-

petitioner "[h]aving dictated the terms of engagement was entitled to have his motion decided as he framed it." [3] In Rain-eri v. United States, 233 F. 3d 96 (1st Cir. 2000), it was confirmed, that a conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalites, may result in a disasterous deprivation of a future opportunity to have a well-justified grievance adjudica-ted. The court's own act of conversion which was approved under the pre AEDPA law because it was lawful and harmless might under AEDPA's new law, become extraordinary harmful to a prisoner's rights.

In United States v. Miller, 197 F.3d 644 (3rd Cir. 1999) (quoting Adams, 155 F.3d at n.10), it was stated that District Courts should not automatically treat pro se post conviction motions as motions attacking sentence; [4] rather, upon receipt of pro se pleading challenging inmates conviction or incarceration, whether styled as a motion attacking sentence or not, district court should issue a notice to petitioner regarding effect of his pleading.

Under AEDPA, the practice of liberal characterization that once opened doors of the federal courts to pro se litigants, now

---

[3] See Pratt v. United States, 129 F. 3d 54, 58 (1st Cir. 1997)(discussing statutory regime): United States v. Miller, 197 F.3d 644 (3rd Cir. 1999); United States v. Kelly, 235 F.3d 1238 (10th Cir. 2000); and Adams v. United States, 155 F.3d 582 (2nd Cir. 1998).

[4] Mr. Bey did not contest either the basis or length of his confinement, but complained about the conditions of his confinement. Jurisdiction is also grounded in 28 U.S.C. § 1343(3).

threatens unintentionally to close them shut. Federal Courts have long recognized that they have an obligation to look behind the label of a motion filed by a pro se inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework. This obligation stems from the time honored practice of construing pro se plaintiff's pleadings liberally. [5]

### ACTIONS OF THE FBOP PROVIDE A VIABLE FOUNDATION FOR PETITIONER'S LEGAL ENTITLEMENT CLAIM TO DUE PROCESS UNDER 28 U.S.C. § 2241

The petitioner argues that decisions contrary to assurances made by FBOP officials, and adverse to his liberty interest, has justified the action currently before this court. Attached and incorporated by reference, is a documented record of custody classification events, that will affirmatively establish petitioner's claim to the FBOP assured entitlement. This argument is premised on the fact that petitioner was told verbally, and through writing, [6] that he would be able to earn custody level reductions for demonstrating a positive institutional adjustment that would allow eventual "camp placement." To earn these he would have to comply with the established program objectives, which includes taking adult continuing education courses;

---

[5] See Haines v. Kerner, 404 U.S. 519, 520 S.Ct. 594, 30 L.Ed 2d 652 (1972) ("[A]llegations such as those assertained by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence").

[6] During mandatory unit team/inmate classification meetings, documents were provided to Mr. Bey that supports his belief in earning minimum custody (camp) placement.

clear conduct; and completing his court imposed financial respon-
sibility ("FRP") payments towards satisfying the special assess-
ment.

Upon completing the designation, and petitioner's transport
to his parent institution, at the Federal Correctional Institut-
ion ("FCI") Ray Brook, in New York, an initial custody classifi-
cation was scored by the unit team. Petitioner was instructed by
FBOP officials, that he had been scored as a "High Security"
custody level inmate, with 25 points. [7] At this time petitioner
was instructed that his custody points would gradually be lower-
ed, so that he could earn the minimum custody placement. FCI
Ray Brook, is considered a medium-high security level prison. [8]

Because of this security level, the petitioner was told by
his institution case manager, that a "Management Variable" had to
be placed on him, to keep him at Ray Brook, instead of transfer-
ring him to a high security pennitentiary. [9]

---

[7] An inmates initial custody classification shall be scored at the first
program review following initial classification (approximately 7 months after
arrival at an institution). Subsequent reviews shall occur at least every 12
months, but may be conducted earlier in order to enable **progress toward
community activities.** Custody classification shall ordinarily occur in con-
junction with every second program review. See PS 5100.07 Ch.8, page 1.

[8] Security level used to describe the structural variables and inmate-to-
staff ratio provided at the various types of Bureau institutions (i.e.,
Minimum, Low, Medium, High). It also identifies the institution type required
to house inmates based on their histories, institutional adjustment, and
Public Safety Factors as well as the physical security of the institution
to include mobile patrols, gun towers, perimeter barriers, housing, detect-
ion devices, inmate-to staff ratio, and internal security. PS 5100.07 Ch.2
page 5.

[9] Management variables reflect and support the professional judgment of
Bureau staff to ensure the inmates placement in the most appropriate level
institution. Management variables are required when placement has been made
and/or maintained at an institution level inconsistent with inmates security
score..." PS 5100.07 Ch.2, page 3.

By carefully following the attached "Custody Classifcation Forms" provided herewith, we can see that petitioner began with 25 custody level points (from July 1998 to February 1999). On or about July 31, 1999 petitioner's points were reduced to 21. On July 28, 2000, a "Program Review" documents that petitioner had "maintained clear conduct, good work reports, completed standard of living (program study class), participating in FRP." The "Long Term Goals" section of this same document, supports that petitioner had an expectation of "reduced security level."

On or about February 8, 2000, a custody form demonstrates that petitioner earned a custody reduction from high to medium security (from 21 down to 9 points), and the management variable was removed. On a program review dated August 5, 2000, the work performance at petitioner's job placement in the institutions Tool room (A place in the facility where an inmate must be trusted and cleared by the Warden, Captain, Security Investigative Services ("SIS") and his unit team) rated him with "excellent work reports." On page 2 of the same document, the "Long Term Goals" section states "Reduce Custody/Security levels complete FRP obligation."

On or about February 6, 2001, petitioner's custody points were again reduced form 9 down to 7 points, which scored him at a "low security prisoner." This form also reflects that the required obligations were being met. It is vital to add that this document has an area highlighted with a star stating: "* You are now a low level inmate, will consider X-fer. (Sic) to low level.

-6-

facility (Ft. Devens)." Petitioner was congratulated by his unit team, for reducing his custody level, and instructed that if he continues to maintain his efforts he will eventually be eligible for minimum (camp) placement.

On or before June 21, 2001, after arriving at FMC Devens, petitioner's custody level was further reduced to 6 points. On or about September 10, 2002, a form was given to petitioner stating that he has successfully completed his FRP obligation to the court. On or between September 13, 2004 and April 29, 2005, petitioner inquired as to why his custody level points have not been further reduced. He was then told that his custody would never go below 6 points, and that was because he had a Greater Severity PSFV placed upon him, derived from his "enhancement for Leader/Organizer role and drug amount attributed in the PSR." [10]

Constitutionally protected "Liberty interest" in custody and confinement classifications are created by regimes which in the end effectively say "If fact A, B, and C are established in an appropriate fact finding process, you are thereupon legally entitled to a more favorable security custody classification than you presently have. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994). Its effect must be to "plac[e] substantive limitations on official discretion, thereby giving rise, at limits imposed upon discretion to "legitimate claim[s] of entitlement," to classification sought and administratively denied.

---

[10] Mr. Bey was not aware of this change in his custody level determination until after the Sixth Amendment concerns delineated in U.S. v. Booker, __ U.S. __, 125 S.Ct. 738, 160 L.Ed 2d 621 (2005).

With this reasoning, petitioner can affirmatively demonstr-
ate "legal entitlement" to due process, within the protectional
guards of the United States Constitution and "legal entitlement"
to a standard of proof that maintains a constitutional degree of
correctness is to be exercised by the FBOP, in determining the
manner in which a petitioner's sentence will be carried out. [11]
The written record aids petitioner with his demonstration of the
FBOP asserted entitlement. [12]

The justification recently given by the Department of
Justice (FBOP and U.S Attorney's Office) for the PSFV, is that
it is factored from the enhancement portion of the PSR, upon
which could reasonably be argued, that the Supreme Court invali-
dated with the Blakely/Booker pronouncement. [13] If the Court was
reasoned by Blakely/Booker to be without authority to impose the
enhanced penalties in question, then arguably so, the same should
hold true, in the sense that the FBOP cannot, subsequent to the
imposition of the sentence, and acknowledgment of the possible
implications of Booker (In the DOJ General Counsel December 3,
2004 Memorandum incorporated with the § 2241 pleading) apply
additional penalties after Booker was decided, based on those

---

[11] Mr. Bey asserts that without the PSFV Greater severity, his custody points
would be below 5 points (Possibly 2 points at this time), based on what he was
led to believe would bring him closer to progressing towards community based
activities. See PS 5100.07 Ch.8, page 1, ¶ 2 (1/31/2002).

[12] This assurance and understanding was removed by the Unit Team in 2005,
based on the "Leader/Organizer adjustment, and quantity of drugs attributed
in the PSR.

[13] See Department of Justice Office of General Counsel Memorandum Dated
December 3, 2004, discussing in part "The Bureau cannot effect any change to
your sentence unless an amended judgment, or order, issued by the appropriate
court..."

very same enhancements. [14]

The FBOP has, and will continue to interpret the enhancement factors in the PSR, to apply the PSFV aganist petitioner up and until this honorable court moves to grant a resentencing. This would allow the probation department the opportunity to make the appropriate corrections, in the interest of fairness and justice. The Department of Justice ("DOJ") Memorandum referenced in this argument, dated December 3, 2004, authorizes the relief requested by asserting: "...the Bureau does not have the authority to interpret the (Booker) opinion as it relates to your specific case. Again it will be up to you to petition the court that sentenced you..."

### THE DEPARTMENT OF JUSTICE'S READING AND INTERPRETATION OF THE PSR WHICH JUSTIFIED THE PSFV OF GREATER SEVERITY IS IN ERROR AND RELIEF IS WARRANTED

The petitioner argues that DOJ Officials have caused petitioner to be denied a liberty interest concern, resulting from information inaccurately derived from the PSR, or deemed unconstitutionally applied, in violation of the Sixth Amendment. [15] The operational classification regulations being exercised by the DOJ, through the PSR is void of the link between the substantive

---

[14] The BP-9 Response states: "According to your PSR, you were a leader in a drug network which was responsible for distributing 29.6 kilograms of cocaine." (Mr. Bey was not charged as a "leader" or with distribution in the PSR); BP-10 Response: "...you received a 3-level enhancement..." BP-11 (Same).

[15] Mr. Bey can cite numerous cases which held that a plaintiff may request amendment of his records in the possession of a federal agency. See Sellers v. Bureau of Prisons, 959 F.2d 311 (D.C. Cir. 1992); Pototsky v. United States Department of the Navy, 717 F.Supp. 20 (D.Mass. 1989); Kellett v. United States Bureau of Prisons, 856 F.Supp. 65 (D.N.H. 1994); and Reyes v. Supervisor of Drug Enforcement Admin., 647 F.Supp. at 1509-1513 (D.P.R. 1986).

predicates and the mandatory constitutional application.

The respondent conceds that there were changes made in the policy statement, to which petitioner refers, but ignors the full scope of the change in determining a PSFV for Greatest Severity. In PS 5100.07 (9/3/1999 Appendix B, page 1) it states in part:

> "Any drug offender whose current offense includes the following criteria shall be scored in the Greatest Severity category:
> The offender was part of an organizational network and he or she organized or maintained ownership interest/ profits from large-scale drug activity,
> 
> \*\*\* **AND** \*\*\*
> 
> the drug amount equals or exceeds the amount below:
> **Cocaine** greater than or equal to 10,000 gm, 10k, or 22 lb. (The part pertaining to Bey is quoted).

As we can see, there  was a great deal of emphasis placed on including the " \*\*\* AND \*\*\* " because a reasoned reading would dictate that both elements had to be met, to apply the PSFV in a drug case.

The change to the policy statement in 2002, took an approach at the determining factor to apply the PSFV for a drug crime. See [PS 5100.07 CN-2 1/31/2002, Appendix G, page 1]. This page has clarification as to whom to consider in the PSFV application of a "Drug Organizer/Leader."[16] We now look to the sentencing trans-cripts, as quoted by respondent on page 10 of the opposition:

> "... I think its quite appropriate as the probation

---

[16] "Read the: 'Offense conduct' section of the PSI and any  other available information to understand what the inmate did in the criminal activity. The functions are listed in descending order of SERIOUSNESS." There are preceding titles and descriptions that follow this application for placement of the PSFV.

officer has concluded that the defendant Bey operated
at a lower level than Moore and Jubba and **should not
be classified as a manager,** but I find ... he was
deserving of the three-level enhancement as a **super-
viser ...**" (emphasis mine) [Sent Tr: page 16, lns.5-15].

Looking at the accompanying page [PS 5100.07, Appendix G,
page 2] there are defined titles as to who is "NOT A DRUG ORGAN-
IZER/LEADER." The Court, as respondent conceds, did not classify
petitioner as a "manager," but under the term "Superviser." For
this reason, the respondent's application of "Leader/Organizer"
in attributing the PSFV becomes an additional enhancement, beyond
the offense of conviction and sentencing, to which could reason-
ably be asserted as a viable claim of "actual innocence"of the
FBOP enhancement to "Organizer/Leader" invoking due process.[17]

The non retroactive effect of U.S. v. Booker, is not an
issue that needs addressing, as this case challenges the events
subsequent to the conviction and sentence. In this sense, another
argument along this line of reasoning, would be that the Supreme
Court made Booker, to "apply today's holding ... to all cases on
direct review." The controlling part of this reasoning in the
pronouncement is " ... with no exception for cases in which the
new rule constitutes  a 'clear break' with the past.'" Quoting
Griffith v. Kentucky, 479 U.S. 314, 328 (1987).

This portion of the Supreme Courts opinion would tend to
infer, that if a situation has arisen in  the present, such as

---

[17] See Little v. United States, 2002 WL 1424581 (D. Mass.)(unpublished opinion)
For the proposition of challenging "actual innocense" review for an enhancement
factor.

-11-

the situation currently before this court, then the respndent's argument of retroactivity is of no effect. This would be so, because a "clear break with the past" could be read to infer a change in the FBOP's reading and application of PSR enhanced factors.

Finally, in addressing respondent's argument IV, petitioner conceds that he was sentenced under a mandatory sentencing guide-lines structure, prior to the decision in <u>Booker</u>. It also goes on to assert: "... there is no indication that the Court would have sentenced Bey to a lesser term or would have declined to impose a role-in-offense enhancement, had the court viewed the sentencing guidelines as advisory. See <u>United States v. Casas</u>, 425 F.3d 23, 59 (1st Cir. 2005)..." The petitioner rebuts this presumption, by first stating that the Sixth Amendment claim delineated in the <u>Blakely/Booker</u>, decision has been preserved, throughout the course of the proceedings.

In fact, the respondent conceds, that petitioner had "... challenged his sentence in three respects: the calculation of the amount of cocaine, the enhancement for obstruction of justice and the enhancement for his supervisory role. He argued that given the enhanced penalties, each of these elements should have been proven beyond a reasonable doubt..." [18] There are a series of cases, in which the circuit courts have addressed the

---

[18] During every stage of the proceedings (Sentencing, Direct Appeal, and § 2255), Mr. Bey argued pro se, that the enhancement factors imposed should have been determined beyond a reasonable doubt, under the Sixth Amendment pre <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>, thereby diligently preserving his claim.

-12-

preservation of a Sixth Amendment "Booker" error.[19]

The Court at sentencing, mentions petitioner's "hand
written" objections to the PSR (Where petitioner first preserved
the Blakely/Booker error) See [Sent. Tr: page 2, lns. 9-18].
It could reasonably be infered from the record, that the Court,
in responding to defense counsel's comments, regarding the sever-
ity of the sentence of 27 years, the Court stated in part:

> "... This is not an issue as to which this Court
> has any authority to disregard the guideline
> (mandatory scheme) system and the statutory
> provisions with respect to it..." [Sent. Tr: page 35,
> lns. 2-9]. (emphasis added)

Also:      "... There may be differences of opinion about whether
> offenses of this category, drug offenses in particular,
> deserve the level of severity of treatment that
> Congress and the Guidelines Commission have determined,
> but those are issues to be decided in another forum,
> not issues with respect to which it is appropriate
> for this Court to disregard the authoritative sources
> that it is obligated to follow in making the deter-
> mination in cases before it..."

It can appropriately be argued that this petitioner has
afforded this honorable court with the perfect "forum" to voice
its opinion, concerning both the implications of the argument
before it, as well as addressing the fact as to whether this

---

[19] See United States v. Antonakopoulos, 399 F.3d 68 (1st Cir. 2005); United
States v. Crosby, 397 F.3d 103 (2nd cir. 2005); United States v. Ameline, 401
F.3d 1007 (9th Cir. 2995)(en banc); United States v. Casas, 425 F.3d 8, 10
(1st Cir. 2005); The Forth prong test in United States v. Olano, 507 U.S. 725,
113 S.Ct. 1770, 123 L.Ed 2d 508 (1993), which deals with un preserved error
and is quoted in the above cited cases.

court would have imposed a lessor sentence, had it known at the time that the sentencing guidelines were advisory. At present, the respondent cannot conclusively prove other wise. As reasoned in Casas, this would justify further development of this issue, upon the remand for the resentencing requested under § 2241.

## CONCLUSION

The Supreme Court in Marbury v. Madison, 5 U.S. 137 (1803), stated that if a defendant has a right, and that right has been violated, do the laws of this country afford him remedy? [5 U.S. 137, 163]. The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. "While a lawmaker is entirely free to ignor ordinary meanings of words and make definitions of its own, that device may not be employed so as to change the nature of acts or things to which words are applied." See Carter v. Carver Coal Co., 298 U.S. 238, 56 S.Ct 855 (1936).

To remedy the situation concerning the "substantive predicates" used to govern the FBOP's official decision making from factors interpreted from the PSR, it is necessary, and respectfully prayed that this court compel a result that requires that any result reached by the FBOP through the use of the PSR are contingent upon the finding that constitutionally applied predicates are met. Constitutionally applied predicates to which compliance is sought, is through the protection of the Sixth Amendment, that culpability for subsequent sentencing punishment be found at a no lesser standard than applied to the Courts.

-14-

## EPILOGUE

The petitioner has learned a valuable lesson, throughout this ordeal, and that is to stay focused on making a positive and legal contribution to his family and in society. Concerning the "entitlement" argument raised herein, petitioner focuses on the fact that he was given assurances by FBOP officials that he could and would earn a "minimum custody" (camp) placement.

On this, he gave his promise and word to his children he would do all he could to earn the asserted camp placement, where a possibility exists that they could walk outside together, laugh and cry together. This would remove the effect of family visiting him in an environment where they saw and heard the harsh conditions of "gun towers"; huge metal doors and bars being slammed shut behind them, as well as everything else associated with High, Medium, or Low custody.

The tragedy of this injustice is amplified by the sobering realization that the only thing petitioner has left, after serving almost 10 years in federal custody, are his promises, and his word to his children and family. Now, he has been placed in a position where he will disappoint his family once again. There are some instances where a person demonstrates he may be worthy of a second chance, where as other prisoners are comfortable with their lives in the current polluted environment. The second chance petitioner is requesting, is the opportunity to be heard completely and fairly in this pleading, so that in the end he will be able to show his family he had done his very best to keep that promise.

-15-

Respectfully presented,

Dated: _____          _____
                                  Joseph B. Bey,Jr., Pro se.
                                  No. 21146-038
                                  F.M.C. Devens, Box 879
                                  Ayer, MA. 01432

## CERTIFICATE OF SERVICE

I Joseph B. Bey,Jr. do hereby affirm and attest that I have mailed a copy of the attached motion to the Office of the Respondent, by way of the United States Attorney's Office, at One Courthouse Way, Boston, Massachusetts 02210, on this 31st day of November 2005. Signed pursuant to 28 U.S.C. § 1746.

                                  _____
                                  Joseph B. Bey,Jr.

-16-

```
        REGNO: 21146-038                 FORM DATE: 02-09-1999        ORG: RBK
 (A) NAME....: BEY                        JOSEPH     B
 SEN LIMT....: NONE                       MGMT VARIABLE..: LT SECU
 PUB SAFETY..: GRT SVRTY,SENT LGTH           MV EXPIRE: 06-08-1999

 (B) DETAINER: (0) NONE                   SEVERITY.......: (7) GREATEST
 LENGTH......: (5) 84 PLUS MOS (MONTHS): 239
 PRIOR.......: (3) SERIOUS                ESCAPES........: (0) NONE
 VIOLENCE....: (4) > 15 YRS SERIOUS       PRECOMMT STATUS: (0) N/A


 (C) TIME SERVED.....: (3) 0-25%          DRUG/ALC INVOLV: (2) PAST 5 YRS
 MENT/PSYCH STABILITY: (4) FAVORABLE      TYPE DISCIP RPT: (5) NONE
 FREQ DISCIP REPORT..: (3) NONE           RESPONSIBILITY.: (4) GOOD
 FAMILY/COMMUN TIES..: (4) GOOD


 ========================== LEVEL AND CUSTODY SUMMARY ==========================
 BASE SCORE   CUST SCORE   VARIANCE   SEC TOTAL   SEC LEVEL   CUSTODY   CONSIDER
    +19          +25          0         +19         HIGH        IN       SAME

 (D) TYPE REVIEW    NEW CUSTODY    APPROVED:   YES   NO   NEXT REVIEW:  6-99
     ___REGULAR         ___MAX
     ___EXCEPTION       ___IN      CHAIRPERSON SIGNATURE....: C Sllim  CS
                        ___OUT     WARDEN/DESIGNEE SIGNATURE
                        ___COM          FOR EXCEPTION REVIEW:
```

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:




COPY: CENTRAL FILE, SECTION TWO
      INMATE


G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

```
  RBKMJ  607.00 *       CUSTODY CLASSIFICATION FORM      *      07-31-1999
PAGE 001 OF 001                                                08:54:37

        REGNO: 21146-038           FORM DATE: 07-31-1999        ORG: RBK
(A) NAME....: BEY                  JOSEPH      B
SEN LIMT....: NONE                 MGMT VARIABLE..: LT SECU
PUB SAFETY..: GRT SVRTY,SENT LGTH    MV EXPIRE: 07-21-2000


(B) DETAINER: (0) NONE             SEVERITY........: (7) GREATEST
LENGTH......: (5) 84 PLUS MOS (MONTHS): 239
PRIOR.......: (3) SERIOUS          ESCAPES.........: (0) NONE
VIOLENCE....: (4) > 15 YRS SERIOUS PRECOMMT STATUS: (0) N/A


(C) TIME SERVED.....: (3) 0-25%    DRUG/ALC INVOLV: (2) PAST 5 YRS
MENT/PSYCH STABILITY: (4) FAVORABLE TYPE DISCIP RPT: (4) 1 LOW MOD
FREQ DISCIP REPORT..: (2) 1        RESPONSIBILITY.: (2) AVERAGE
FAMILY/COMMUN TIES..: (4) GOOD


========================= LEVEL AND CUSTODY SUMMARY ========================
BASE SCORE  CUST SCORE  VARIANCE  SEC TOTAL  SEC LEVEL  CUSTODY  CONSIDER
   +19        +21          0        +19        HIGH       IN      SAME

(D) TYPE REVIEW   NEW CUSTODY   APPROVED:____YES____NO   NEXT REVIEW: 2/2000
    ___REGULAR    ___MAX
    _X_EXCEPTION  ___IN    CHAIRPERSON SIGNATURE....: Sullivan C.
                  ___OUT   WARDEN/DESIGNEE SIGNATURE
                  ___COM       FOR EXCEPTION REVIEW: _____

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:




COPY: CENTRAL FILE, SECTION TWO
      INMATE


G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

```
RBKMJ              *         PROGRAM REVIEW REPORT         *        01-28-2000
PAGE 002                                                           13:25:58
```

CCC RECOMMENDATION: Will Consider if eligible when 1yr. from release.

PROGRESS MADE SINCE LAST REVIEW: Maintained Clear conduct, good work reports, Completed Standed of (wing. Participating in FRP.

GOALS FOR NEXT PROGRAM REVIEW MEETING: Maintain Clear Conduct. Good Work reports and good sanitation. Continue to participate in Counseling programs. Continue to Participate in FRP.

LONG TERM GOALS: Reduce Security level, Establish a solid release plan which includes a firm offer of residence or employment. Determine if relocation will be necessary (Colorado) Save a substantial amount of $ for release.

OTHER INMATE REQUESTS/TEAM ACTIONS: _____

```
   RBKMJ  607.00 *    MALE CUSTODY CLASSIFICATION FORM    *    02-08-2000
PAGE 001 OF 001                                                 13:52:42

      REGNO: 21146-038              FORM DATE: 02-08-2000           ORG: RBK
(A) NAME....: BEY                   JOSEPH      B
DES FACL/LEV: RBK      /MEDIUM      MGTV: NONE
PUBSFTY: GRT SVRTY,SENT LGTH        MVED:


(B) DETAINER: (0) NONE              SEVERITY.......: (7) GREATEST
MOS REL.....: 238
PRIOR.......: (0) NONE              ESCAPES........: (0) NONE
VIOLENCE....: (2) > 15 YRS SERIOUS  PRECOMMT STATUS: (0) N/A


(C) TIME SERVED.....: (3) 0-25%     DRUG/ALC ABUSE.: (3) > 5 YRS
MENT/PSYCH STABILITY: (4) FAVORABLE TYPE DISCIP RPT: (4) 1 LOW MOD
FREQ DISCIP REPORT..: (2) 1         RESPONSIBILITY.: (2) AVERAGE
FAMILY/COMMUN TIES..: (4) GOOD

============================ LEVEL AND CUSTODY SUMMARY  ============================
BASE   CUST   VARIANCE   SEC TOTAL  SCORED LEV MGMT SEC LEVEL   CUSTODY  CONSIDER
+9     +22    0          +9         MEDIUM     N/A              IN       SAME

(D) TYPE REVIEW    NEW CUSTODY   APPROVED:   YES   NO   NEXT REVIEW: 2-2001
     REGULAR           MAX
     EXCEPTION         IN      CHAIRPERSON SIGNATURE....: CSullivan CSm
                       OUT     WARDEN/DESIGNEE SIGNATURE
                       COM        FOR EXCEPTION REVIEW:
```

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:




COPY: CENTRAL FILE, SECTION TWO
      INMATE


G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

```
  RBKMJ            *            PROGRAM REVIEW REPORT            *      08-05-2000
  PAGE 001                        .                                    09:10:10

  INSTITUTION: RBK  RAY BROOK  FCI

  NAME.......: BEY, JOSEPH B                              REG. NO: 21146-038
  RESIDENCE..: HYANNIS, MA 02601

  TYPE OF REVIEW......: INITIAL CLASSIFICATION PROGRAM REVIEW
  NEXT REVIEW DATE....: __2-2001____

  PROJ. RELEASE DATE..: 12-29-2019              RELEASE METHOD.: GCT REL
  PAROLE HEARING DATE.: NONE                    HEARING TYPE...: NONE

  DATE OF NEXT CUSTODY REVIEW: _2-2001____      DETAINERS (Y/N) N

  CIM STATUS (Y/N)....(Y)            IF YES, RECONCILED (Y/N): _OK_

  PENDING CHARGES.....: _None Know_

  OFFENDER IS SUBJECT TO NOTIFICATION UNDER 18 U.S.C. 4042(B) (Y/N).....: PU CD

  CATEGORY   - - - - - - -    CURRENT ASSIGNMENT - - - - - - - -   EFF DATE    TIME

  CMA        PROG RPT         NEXT PROGRESS REPORT DUE DATE         07-21-2001  1556
  CMA        RPP NEEDS        RELEASE PREP PGM NEEDS                12-29-2017  1559
  CMA        V94 CDA913       V94 CURR DRG TRAF ON/AFT 91394        08-07-1998  1556
  CMA        V94 PV           V94 PAST VIOLENCE                     08-07-1998  1556
  CUS        IN               IN CUSTODY                            06-08-1998  1010
  DRG        DRG E COMP       DRUG EDUCATION COMPLETED              03-30-1999  1028
  DRG        DRG I NONE       NO DRUG INTERVIEW REQUIRED            08-07-1998  1555
  EDI        ESL HAS          ENGLISH PROFICIENT                    07-16-1998  1515
  EDI        GED HAS          COMPLETED GED OR HS DIPLOMA           03-11-1999  0001
  FRP        PART             FINANC RESP-PARTICIPATES              08-10-1998  1400
  LEV        MEDIUM           SECURITY CLASSIFICATION MEDIUM        01-28-2000  1324
  MDS        REG DUTY         NO MEDICAL RESTR--REGULAR DUTY        08-05-1998  1606
  MDS        YES F/S          CLEARED FOR FOOD SERVICE              07-29-1998  0001
  QTR        G07-250U         HOUSE G/RANGE 07/BED 250U             02-16-2000  1008
  RLG        OTHER            OTHER RELIGION                        01-28-2000  1329
  WRK        TOOL ROOM        TOOL ROOM                             12-22-1999  0001
```

WORK PERFORMANCE RATING: _Tool room - excellent work report - demonstrates good responsibility. Code 1._

INCIDENT REPORTS SINCE LAST PROGRAM REVIEW: _Class ... Vial 6-99 (400 level incident report for Poss. Insuffing of property)_

FRP PLAN/PROGRESS: _Participates on a 25/QTR schedule - Counseled for missing payments $275/Bal/400_

RELEASE PREPARATION PARTICIPATION: _Follows plans are unsure. Has 5-years of S.R. in Dist. of Mass._

```
RBKMJ              *        PROGRAM REVIEW REPORT        *      08-05-2000
PAGE 002                                                       09:10:10
```

CCC RECOMMENDATION: _Will discuss when approx 12 months from release._

PROGRESS MADE SINCE LAST REVIEW: _Maintained Clear Conduct, good work reports and made FRP payments_

GOALS FOR NEXT PROGRAM REVIEW MEETING: _You have not participated in any program this past 6 months. Recommend Business Program (Mr. Stone) begin by October 2000 and Complete by December 30, 2000. Also consider Workplace Basics Pgm. Begin by Oct 1, Complete by Dec 1, 2000. maintain Clear conduct, good work reports and continue to participate in FRP._

LONG TERM GOALS: _Reduce Custody / Security levels, complete FRP obligations and establish a solid release plan. You should complete a release program prior to release and save $. Attempt to secure a halfway house prior to release._

OTHER INMATE REQUESTS/TEAM ACTIONS: _You are subject to the VCCLEA notification bond on your current Federal Drug Trafficking Crime and prior Conviction of a Crime of violence._

```
   RBKMJ  607.00 *        MALE CUSTODY CLASSIFICATION FORM       *      02-06-2001
   PAGE 001 OF 001                                                      09:05:58

       REGNO: 21146-038                      FORM DATE: 02-06-2001         ORG: RBK
   (A) NAME....: BEY                          JOSEPH      B
   DES FACL/LEV: RBK        /MEDIUM           MGTV: NONE
   PUBSFTY: GRT SVRTY,SENT LGTH               MVED:


   (B) DETAINER: (0) NONE                     SEVERITY.......: (7) GREATEST
   MOS REL.....: 226
   PRIOR.......: (0) NONE                     ESCAPES........: (0) NONE
   VIOLENCE....: (2) > 15 YRS SERIOUS         PRECOMMT STATUS: (0) N/A


   (C) TIME SERVED.....: (3) 0-25%            DRUG/ALC ABUSE.: (3) > 5 YRS
   MENT/PSYCH STABILITY: (4) FAVORABLE        TYPE DISCIP RPT: (5) NONE
   FREQ DISCIP REPORT..: (3) NONE             RESPONSIBILITY.: (4) GOOD
   FAMILY/COMMUN TIES..: (4) GOOD


   ======================= LEVEL AND CUSTODY SUMMARY  ==========================
   BASE  CUST  VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
   +9    +26    -2         +7    LOW        N/A               IN     DECREASE

   (D) TYPE REVIEW    NEW CUSTODY   APPROVED:____YES __NO  NEXT REVIEW: 2-6-02
       REGULAR         __MAX
       _EXCEPTION      __IN      CHAIRPERSON SIGNATURE....:
                       __OUT     WARDEN/DESIGNEE SIGNATURE
                       __COM       FOR EXCEPTION REVIEW:
```

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION: Due to history
of serious violence, Sentence Length and GS
PSF, Out custody is not appropriate at
this time.


```
   COPY: CENTRAL FILE, SECTION TWO
         INMATE


   G5149        INMATE/DESIG FACL LEVEL MISMATCHED, HAVE REGION ADD A MGTV
   G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

```
  RBKMJ           *        PROGRAM REVIEW REPORT          *     02-06-2001
PAGE 001                                                        09:06:26

INSTITUTION: RBK  RAY BROOK  FCI

NAME.......: BEY, JOSEPH B                        REG. NO: 21146-038
RESIDENCE..: HYANNIS, MA 02601

TYPE OF REVIEW......: INITIAL CLASSIFICATION/PROGRAM REVIEW
NEXT REVIEW DATE....:       2-6-01

PROJ. RELEASE DATE..: 12-29-2019         RELEASE METHOD.: GCT REL
PAROLE HEARING DATE.: NONE               HEARING TYPE...: NONE

DATE OF NEXT CUSTODY REVIEW:  2-6-02     DETAINERS (Y/N)  N

CIM STATUS (Y/N)....: Y          IF YES, RECONCILED (Y/N):   ok

PENDING CHARGES.....:    Unknown

OFFENDER IS SUBJECT TO NOTIFICATION UNDER 18 U.S.C. 4042(B)  (Y/N)....: P(C)
   IF YES - CIRCLE ONE - DRUG TRAFFICKING/CURRENT VIOLENCE/PAST VIOLENCE

CATEGORY     - - - - - -  CURRENT ASSIGNMENT - - - - - - -  EFF DATE    TIME

CMA      PROG RPT     NEXT PROGRESS REPORT DUE DATE    07-21-2001    1556
CMA      RPP NEEDS    RELEASE PREP PGM NEEDS           12-29-2017    1559
CMA      V94 CDA913   V94 CURR DRG TRAF ON/AFT 91394   08-07-1998    1556
CMA      V94 PV       V94 PAST VIOLENCE                08-07-1998    1556
CUS      IN           IN CUSTODY                       06-08-1998    1010
DRG      DRG E COMP   DRUG EDUCATION COMPLETED         03-30-1999    1028
DRG      DRG I NONE   NO DRUG INTERVIEW REQUIRED       08-07-1998    1555
EDI      ESL HAS      ENGLISH PROFICIENT               07-16-1998    1515
EDI      GED HAS      COMPLETED GED OR HS DIPLOMA      03-11-1999    0001
FRP      PART         FINANC RESP-PARTICIPATES         08-10-1998    1400
LEV      LOW          SECURITY CLASSIFICATION LOW      02-06-2001    0905
MDS      REG DUTY     NO MEDICAL RESTR--REGULAR DUTY   08-05-1998    1606
MDS      YES F/S      CLEARED FOR FOOD SERVICE         07-29-1998    0001
QTR      G07-250L     HOUSE G/RANGE 07/BED 250L        10-02-2000    1117
RLG      OTHER        OTHER RELIGION                   01-28-2000    1329
WRK      TOOL ROOM    TOOL ROOM                        12-22-1999    0001
```

WORK PERFORMANCE RATING: _Tool Room Crk. Mr. Soylis tour of Work Area determined excellent Worker_

INCIDENT REPORTS SINCE LAST PROGRAM REVIEW: _Clear Conduct since 6-99._

FRP PLAN/PROGRESS: _Participate 25/month on $900 assessment Balance = $175_

RELEASE PREPARATION PARTICIPATION: _Will begin 12-29-2007._

RBKMJ              *         PROGRAM REVIEW REPORT          *         02-06-2001
PAGE 002                                                            09:06:26

CCC RECOMMENDATION: _Will Descuss when 11-13 month_
_from Release._

PROGRESS MADE SINCE LAST REVIEW: _Clear conduct. Excellent_
_Work reports and Enrolled in NFPT._

GOALS FOR NEXT PROGRAM REVIEW MEETING: _Continue to participate_
_in NFPT - Complete by July 1, 2001._
_2 Save $25/month to send home - Child support_

LONG TERM GOALS: _Persue Distance Education Pgms_
_in Business Law._

OTHER INMATE REQUESTS/TEAM ACTIONS: _Subject to UCCLEU_
_notification requirements._

_X Yes are now a Low Level inmate._
_Will Consider X-fer to low level_
_facility (FT. Devens)._

```
   DEVBA  607.00 *      MALE CUSTODY CLASSIFICATION FORM      *      06-21-2001
PAGE 001 OF 001                                                      15:24:26

     REGNO: 21146-038                  FORM DATE: 06-21-2001           ORG: DEV
(A) NAME....: BEY                      JOSEPH      B
DES FACL/LEV: DEV LOW   /LOW           MGTV: NONE
PUBSFTY: GRT SVRTY,SENT LGTH           MVED:


(B) DETAINER: (0) NONE                 SEVERITY.......: (7) GREATEST
MOS REL.....: 222
PRIOR.......: (0) NONE                 ESCAPES........: (0) NONE
VIOLENCE....: (2) > 15 YRS SERIOUS     PRECOMMT STATUS: (0) N/A


(C) TIME SERVED.....: (4) 26-75%       DRUG/ALC ABUSE.: (3) > 5 YRS
MENT/PSYCH STABILITY: (4) FAVORABLE    TYPE DISCIP RPT: (5) NONE
FREQ DISCIP REPORT..: (3) NONE         RESPONSIBILITY.: (4) GOOD
FAMILY/COMMUN TIES..: (4) GOOD


============================= LEVEL AND CUSTODY SUMMARY ========================
BASE  CUST  VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
 +9    +27    -3       +6        LOW        N/A             IN       DECREASE

(D) TYPE REVIEW    NEW CUSTODY   APPROVED:___ YES ✓ NO  NEXT REVIEW: 6/21/2002
      REGULAR        MAX
   ✓EXCEPTION      ✓IN          CHAIRPERSON SIGNATURE.... [signature]
                  ___OUT         WARDEN/DESIGNEE SIGNATURE.
                  ___COM            FOR EXCEPTION REVIEW: _____
```

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:

*A reduction in custody is not warranted at this time due to Mr. Bey's PSF of Greatest Severity & Sentence Length. Additionally, Mr. Bey has 222 months remaining to serve.*

```
COPY: CENTRAL FILE, SECTION TWO
      INMATE


G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

REGNO: 21146-038 LNAME: BEY                         OBLG NO: 1       FUNC: DIS
FIN DOC NO: 1     FRP ASGN: PART                        CAUSE OF ACTION: XCVF
TYPE OBLG.: ASSESSMENT USDC
COJ/COJ OV: FMA       DOCKET NO: 1:96CR10178-003      DATE IMPOSED.: 03-11-1998
AMT IMP...: 400.00                                    WHEN PAYABLE.: IMMEDIATE
USAO NO...:                                           OBLG STATUS..: COMPLETEDZ
FIXED PAYMENT AMT............:
CALCULATED EXPIRATION DATE...: 03-11-2003    MANUAL EXPIRATION DATE:
FINANCIAL LITIGATION UNIT ADDRESS:
  ONE COURTHOUSE WAY
  U.S. COURTHOUSE SUITE 9200
  BOSTON MA 02210
  COMM NO: AREA: 617 NO: 748-3309   EXT:
  FTS  NO: AREA:    NO:        EXT:       FAX NO: AREA: 617 NO: 748-3972

TOTPAY(-): 400.00        TOTREF(+): 0.00         TOTCOR(+): 0.00
OBLG BALANCE..: 0.00            DT LAST PAYMENT.: 09-06-2002
DT LAST REFUND:                 DT FINAL PAYMENT: 09-06-2002
DT OBLG ADDED.: 07-30-1998      DT LAST UPDATED.: 09-06-2002   USERID: AUTODED

G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

                              (A) IDENTIFYING DATA
REG NO..: 21146-038                  FORM DATE: 09-13-2004          ORG: DEV
NAME....: BEY, JOSEPH B                                         CR HX PT: 5
                                      MGTV: NONE
PUB SFTY: GRT SVRTY, SENT LGTH        MVED:
                              (B) BASE SCORING
DETAINER: (0) NONE                    SEVERITY.......: (7) GREATEST
MOS REL.: 183                         PRIOR..........: (0) NONE
ESCAPES.: (0) NONE                    VIOLENCE.......: (2) > 15 YRS SERIOUS
PRECOMMT: (0) N/A
                              (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%          DRUG/ALC ABUSE.: (3) > 5 YRS
MENTAL STABILITY: (4) FAVORABLE       TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE            RESPONSIBILITY.: (4) GOOD
FAMILY/COMMUN...: (4) GOOD

                          --- LEVEL AND CUSTODY SUMMARY ---
BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
+9   +27    -3       +6        LOW          N/A           IN       DECREASE


G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

```
CUSTODY CLASSIFICATION FORM INSTRUCTIONS - MALE (BP-338)
```

### INTRODUCTION

Custody classification is a procedure whereby inmates are
assigned levels according to their criminal histories and
institutional behavior/adjustment. An inmate's custody level is
an indication of how much staff supervision is required for an
inmate within and beyond the confines of the institution.

An inmate's initial custody classification shall be scored at the
first program review following initial classification
(approximately 7 months after arrival at an institution).
Subsequent reviews shall occur at least every 12 months, but may
be conducted earlier in order to enable progress toward community
activities. Custody classification shall ordinarily occur in
conjunction with every second program review.

Ordinarily, an inmate's security level and custody level shall be
reviewed following any new sentence or sentence reduction, or any
time a change in external factors or disciplinary action might
affect the security or custody level.

When transferring to another institution, inmates normally retain
their custody assignments. If the custody level is inconsistent
with that authorized at the receiving institution, the sending
institution shall change the inmate's custody prior to transfer.
Holdovers shall retain their custody level assignments until
received at the designated institution.

At each annual custody review, a new Custody Classification Form
shall be completed, even though the scoring elements may not have
changed from the previous form. Only the most current Custody
Classification Form shall be retained in the Inmate Central File,
except for those forms that must be retained to document
appropriate review and approval for custody reductions (e.g.,
custody reductions for exception cases require the Warden, or
designee, to sign the Custody Classification Form. The form
should be maintained to document the review and approval). As
set forth in the definition of maximum custody, Chapter 2, a BP-
338 form changing custody to or from maximum custody must be
permanently maintained.

It should be clearly understood that the Custody Classification
Form only recommends an inmate's custody. The unit team and/or
Warden is the final review authority. The intent of the Custody
Classification system is to permit staff to use professional
judgment within specific guidelines. Custody changes are not
dictated by the point total. However, when the unit team decides
not to follow the recommendation of the point total, they must

**PUBLIC SAFETY FACTORS.**  There are certain demonstrated behaviors which require increased security measures to ensure the protection of society.  There are nine Public Safety Factors (PSFs) which are applied to inmates who are not appropriate for placement at an institution which would permit inmate access to the community (i.e., MINIMUM security).  The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or prior behavior.

**REDESIGNATION.**  The reassignment of an inmate from one institution to another after initial designation.  Unit staff submit a request to the appropriate office, and the inmate's case is reviewed for possible transfer.  Approval of a redesignation results in an order from the Regional Office, Central Office, or CCM indicating a correctional institution to which an inmate is to be transferred.

**RELEASE RESIDENCE.**  The verifiable destination to which an inmate realistically plans to reside upon release from Bureau custody.  The inmate is to provide proof of residence to his or her unit staff.  Staff shall rely upon the following references to assist in verification: Presentence Investigation Report/USPO verification; telephone and visiting lists; incoming and outgoing mail.  Attempts shall be made to place inmates in the most appropriate security level institution within 500 miles from his or her release residence.  Based on security needs and population pressures, placement may not always be at the closest institution within a 500-mile radius of a release residence.

**SECONDARY DESIGNATION.**  Designation of an institution to which an inmate is to be moved after completion of some treatment, program, or process.

**SECURITY CUT POINT.**  The numerical break between inmate security levels.

**SECURITY LEVEL.**  Used to describe the structural variables and inmate-to-staff ratio provided at the various types of Bureau institutions (i.e., Minimum, Low, Medium, High).  It also identifies the institution type required to house inmates based on their histories, institutional adjustment, and Public Safety Factors as well as the physical security of the institution to include mobile patrols, gun towers, perimeter barriers, housing, detection devices, inmate-to-staff ratio, and internal security.

**IN** custody are not eligible for work details or programs outside
the institution's secure perimeter.

**MANAGEMENT SECURITY LEVEL (MSL)**.    Management Security Level is
the security level assigned by the Regional Director or Designee
to an inmate upon application of any of the following Management
Variables:

- PSF Waived;
- Greater Security; and
- Lesser Security.

Based on these Management Variables, the Management Security
Level will normally be one security level greater or lesser than
the scored security level.

**MANAGEMENT VARIABLES**.   Management Variables (MGTVs) reflect and
support the professional judgment of Bureau staff to ensure the
inmate's placement in the most appropriate level institution.
Management Variables are required when placement has been made
and/or maintained at an institution level inconsistent with the
inmate's security score — a score which may not completely/
accurately reflect his or her security needs.

**MAXIMUM CUSTODY**.    The highest custody level assigned to an inmate
requiring the highest level of security and staff supervision.
An inmate with Maximum custody requires ultimate control and
supervision.    This classification is for individuals who, by
their behavior, have been identified as assaultive, predacious,
riotous, serious escape risks, or seriously disruptive to the
orderly running of an institution.    Accordingly, quarters and
work assignments are assigned to ensure maximum control and
supervision.    A custody change to or from Maximum custody must be
justified thoroughly on the BP-338 form and maintained
permanently in the Inmate Central File.                              *

**MISDEMEANANT**.    An inmate convicted of an offense for which the
maximum penalty is one year or less.    Such inmates may not be
transferred to a High security institution without first signing
a waiver.    18 U.S.C. § 4083 prohibits placement of such inmates
in "penitentiaries" without their consent; however, the Bureau
broadens that prohibition to include any High security
institution.    A sample of the waiver is provided in Appendix D.

**OUT CUSTODY**.    The second lowest custody level assigned to an
inmate requiring the second lowest level of security and staff
supervision.    An inmate who has **OUT** custody may be assigned to
less secure housing and may be eligible for work details outside
the institution's secure perimeter with a minimum of two-hour
intermittent staff supervision.

PS 5100.07
9/3/99
Appendix B, Page 1

```
┌─────────────────────────────┐
│   OFFENSE SEVERITY SCALE     │
└─────────────────────────────┘
```

| GREATEST SEVERITY |
| --- |

**Aircraft Piracy** - placing plane or passengers in danger

**Arson** - substantial risk of death or bodily injury

**Assault** - serious bodily injury intended or permanent or life threatening bodily injury resulting)

**Car Jacking** - any

**Drug Offense** - see criteria below*

**Escape** - closed institution, secure custody, force or weapons used

**Espionage** - treason, sabotage, or related offenses

**Explosives** - risk of death or bodily injury

**Extortion** - weapon or threat of violence

**Homicide or Voluntary Manslaughter** - any

**Kidnaping** - abduction, unlawful restraint, demanding or receiving ransom money

**Robbery** - any

**Sexual offenses** - rape, sodomy, incest, carnal knowledge, transportation with coercion or force for commercial purposes

**Toxic Substances/Chemicals:** - weapon to endanger human life

**Weapons** - distribution of automatic weapons, exporting sophisticated weaponry, brandishing or threatening use of a weapon

\*    Any **drug offender** whose current offense includes the following criteria shall be scored in the Greatest severity category:

The offender was part of an organizational network and he or she organized or maintained ownership interest/profits from **large-scale** drug activity,

**\*\*\*AND\*\*\***

the drug amount equals or exceeds the amount below:

**Cocaine** - greater than or equal to 10,000 gm, 10 K, or  22 lb
**Cocaine Base "Crack"** - greater than or equal to 31 gm
**Hashish** - greater than or equal to 250,000 gm, 250 K, or 551 lb
**Marijuana** - greater than or equal to 620,000 gm, 620 K, or 1,367 lb
**PCP** - greater than or equal to 100,000 mg, 100 gm, or 20,000 dosage units
**Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb
**Methamphetamine** - greater than or equal to 16,000 gm, 17 K, or 35 lbs
**Other illicit drugs:** - Amphetamine, Barbiturates, LSD, etc. greater than or equal to 250,000 dosage units

## DISCONTINUED PUBLIC SAFETY FACTORS

**D**     Firearms

**E**     High Drug

**J**     Designation Assessment

**REQUEST FOR PUBLIC SAFETY FACTOR WAIVER.**  Only the Regional Director or designee is authorized to waive a PSF.  A request for waiver of a PSF shall be submitted to the Regional Office via GroupWise form EMS 409, available on BOPDOCS.  The form shall be completed as described below:

(1)  This item should indicate the request is for waiver of a Public Safety Factor.

(2)  This item should indicate whether the inmate agrees with the recommended team action.  If appropriate, an explanation should be provided.

(3)  This item should include current, complete, and accurate information concerning any medical problems the inmate is experiencing.

(4)  This item should include a brief description of the inmate's adjustment during this period of incarceration.

(5)  This item should provide disciplinary information including all actions reflected on the current Custody Classification Form (BP-338).  Significant histories should be summarized.

(6)  It is important that the rationale include complete and specific information providing justification to support the requested action.

(7)  Indicate whether or not the inmate is eligible for a parole hearing.  If yes, indicate the date of the hearing.

PS 5100.07
CN-2 1/31/2002
Appendix G, Page 1

```
┌─────────────────────────────────────────────┐
│          DRUG ORGANIZER/LEADER                │
│     EXPLANATION OF FUNCTION DEFINITIONS       │
└─────────────────────────────────────────────┘
```

Read the
"Offense Conduct" section of the PSI and any other available
information to understand what the inmate did in the criminal
activity.  The functions are listed in descending order of
SERIOUSNESS.

```
┌─────────────────────────────────────┐
│        DRUG ORGANIZER/LEADER          │
└─────────────────────────────────────┘
```

**Importer/High-Level Supplier:** imports or otherwise supplies large
quantities of drugs; is at or near the top of the distribution
chain; has ownership interest in drugs (not merely transporting
drugs for another individual); usually supplies drugs to other
drug distributors and does not deal in retail amounts; may employ
no or very few subordinates.

**Organizer/Leader:** organizes, leads, directs, or otherwise runs a
drug distribution organization.  Receives the largest share of
the profits and has the greatest decision-making authority.

**Grower/Manufacturer:** grows, cultivates, or manufactures a
controlled substance, and is the principal owner of the drugs.
(Keep in mind, the intent of this definition is to capture the
individual who has the capability to manufacture enormous amounts
of drugs in his garage/lab for example, and not the individual
who is growing only five marijuana plants in his basement.)

**Financier/Money Launderer:** provides money for purchase,
importation, manufacture, cultivation, transportation, or
distribution of drugs; launders proceeds of drug sales or
purchases.

**Aircraft Pilot/Vessel Captain:** pilots vessel or aircraft;
requires special skill; does not include inmate who is the only
participant directing a small boat (i.e., a speed boat) onto
which drugs had been loaded from a "mother ship" (such person is
a courier).

PS 5100.07
CN-2 1/31/2002
Appendix G, Page 2

### NOT A DRUG ORGANIZER/LEADER

**Manager:** serves as a lieutenant to assist one of the above; manages all or a significant portion of the manufacturing, importation, or distribution operation; takes instructions from one of the above and conveys to subordinates; directly supervises at least one other co-participant in an organization of at least five co-participants.

**Bodyguard/Strongman/Debt Collector:** provides physical and personal security for another co-participant in the offense; collects debts owed, or punishes recalcitrant persons.

**Chemists/Cooks/Chemical Supplier:** produces LSD, methamphetamine, crack cocaine, or other illegal drugs, but does not qualify as a Grower/Manufacturer because he/she is not the principal owner of the drugs.  Chemical supplier does not handle drugs themselves but engages in the unlawful diversion, sale, or furnishing of listed chemicals or equipment used in the synthesis or manufacturing of controlled substances.

**Supervisor:** supervises at least one other co-participant, however, has limited authority and does not qualify as a Manager.

**Street-Level Dealer:** distributes retail quantities directly to the user.

**Broker/Steerer/Go-Between:** arranges for two parties to buy/sell drugs, or directs potential buyer to a potential seller.

**Courier:** transports or carries drugs with the assistance of a vehicle or other equipment.  Includes situations where inmate, who is otherwise considered to be a crew member, is the only participant directing a vessel (e.g., a speed boat) onto which drugs had been loaded from a "mother ship".

**Mule:** transports or carries drugs internally or on their person, often by airplane, or by walking across a boarder.  Also includes an inmate who only transports or carries drugs in baggage, souvenirs, clothing, or otherwise.

**Renter/Storer:** provides (for profit/compensation) own residence, structures (barns, storage bins, buildings), land, or equipment for use to further the offense.  This inmate is distinguished from the enabler because he/she is paid (in some way) for his/her services.

PS 5100.07
CN-2 1/31/2002
Appendix G, Page 3

**Money runner:** transports/carries money and/or drugs to and from the street-level dealer.

**Off-loader/Loader:** performs the physical labor required to put large quantities of drugs into storage, hiding, or onto some mode of transportation.

**Gopher/Lookout/Deckhand/Worker/Employee:** performs very limited, low-level function in the offense (whether or not ongoing); includes running errands, answering the telephone, receiving packages, packaging the drugs, manual labor, acting as lookout to provide early warnings during meetings, exchanges, or off-loading, or acting as deckhand/crew member on vessel or aircraft used to transport large quantities of drugs.

**Enabler** (Passive): plays no more than a passive role in the offense, knowingly permitting a certain unlawful criminal activity to take place without actually being involved with the activity; may be coerced or unduly influenced to play such a function (e.g., a parent or grandparent threatened with displacement from a home unless they permit the activity to take place), or may do so as "a favor" (without compensation).

**User Only:** possessed small amount of drugs apparently for personal use only; no apparent function in any conspiratorial criminal activity.

**Wholesaler:** sells more than retail/user-level quantities (greater than one ounce) in a single transaction.